William R. CARUTHERS, Plaintiff,

v.

The PROCTOR & GAMBLE MANUFAC-
TURING COMPANY, Defendants.

Civil Action No. 96–2071–GTV.

United States District Court,
D. Kansas.

April 18, 1997.

Patrick F. Hulla, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Plaintiff.

Daniel B. Boatright, James G. Baker, Spencer, Fane, Britt & Browne, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff William R. Caruthers filed this disability discrimination suit, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.; and Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. The case comes before the court on the defendant's motion for partial summary judgment (Doc. 31) on the plaintiff's ADA and FMLA claims. For the reasons stated below, the motion is denied in part and granted in part.

*Factual Background*

The defendant has not complied with D. Kan. R. 56.1. Rather than responding to the plaintiff's statement of additional facts in numbered paragraphs, the defendant alleges facts in the body of his reply memorandum. *See Green v. Reddy,* 918 F.Supp. 329, 333 (D.Kan.1996) ("All facts on which either party relies must be organized by and contained within numbered paragraphs, and all operative facts must be captured within the parties' statement of uncontroverted facts and response thereto."). Because these factual allegations include citations to the record, the court has considered these facts as well as those in the numbered paragraphs. Nonetheless, the court admonishes defense counsel to adhere strictly to the local rules in the future.

The following facts are either uncontroverted or, if controverted, viewed in the light most favorable to the plaintiff. *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Immaterial facts and facts not properly supported in the record are omitted.

Caruthers began working for the defendant in 1972. He is a member of the Independent Chemical & Oil Workers Union, which had entered into a collective bargaining agreement with the defendant during the time relevant to the issues in this case.

In 1987, the plaintiff began suffering from physical ailments that restricted his ability to squat, bend, and lift. The plaintiff was required to sit fifty percent of the time. The defendant put chairs on the production line to accommodate the plaintiff's restrictions, but removed the chairs in early 1992. Chuck Warren, a manager for the defendant, informed Caruthers that the chairs were being removed because the defendant was not paying its employees to sit down. Erika Foley, another manager, told the plaintiff that he was not hired with a chair and his job did not come with a chair.

In February 1992, Caruthers sustained an injury while operating a production line and did not return to work until April 8, 1992. From 1987 through 1992, the plaintiff had been able to perform the essential functions

of his position with accommodation. In February and April 1992, Foley told Caruthers that she did not believe he was injured and that he could leave if he could not perform his job without accommodation. Keenan Beauchamp, another manager, verbalized his skepticism about the need for accommodation and required Caruthers to write a paper explaining the exact nature of his restrictions, which the plaintiff prepared in June 1992.

On October 23, 1992, the defendant increased the responsibilities of its line operators from operating one production line to operating two production lines simultaneously. Also on that date, the defendant informed Caruthers that, because of the operators' increased duties, the defendant had no work available that would fit the plaintiff's restrictions. Three days later, the defendant sent Caruthers home and placed him on leave. The plaintiff had been working as a Converting Technician IV with accommodation.

On November 11, 1992, Caruthers met with Roger Schwabauer, the defendant's personnel manager. Caruthers offered suggestions concerning jobs that would accommodate his physical limitations, including: (1) working full time in a safety coordinator role, which required serving as a line operator twenty-five percent of the time; (2) retaking the clerical tests to become eligible for clerical jobs; (3) being allowed to "retag" (retest) for upper level jobs; and (4) driving a fork truck. According to the plaintiff, the defendant informed him that (1) his inability to perform the line operator job precluded him from the safety coordinator role; (2) he would have to wait one year to retake the clerical tests; (3) he would not be allowed to re-tag; and (4) his medical restrictions precluded him from driving a fork truck.[1]

Caruthers was allowed to retake the clerical tests in December 1992 and initially was informed that he had passed. on January 7, 1993, however, the defendant advised him that he had failed the clerical tests. company records indicate that the plaintiff's test scores were "acceptable" and "borderline."

The defendant did not communicate with Caruthers again until November 19, 1993, when Schwabauer contacted Caruthers to discuss possible accommodations. On January 31, 1994, the plaintiff filed a charge of disability discrimination.

On May 30, 1994, Caruthers returned to work as a fork truck operator, categorized as a Distribution Technician V. Between October 23, 1992 and May 30, 1994, the defendant had numerous vacancies, but did not inform or offer the plaintiff any of the positions even though he had held twelve different positions during his twenty plus years with the company.[2] Although the defendant had light duty work available (at least between February and April 1992) and permitted extended reduced work schedules, the defendant never considered the plaintiff for either. Caruthers lost benefits while he was on leave from October 1992 through May 1994.

After his return to work in 1994, Foley again told the plaintiff that she did not believe he was injured and that he could leave if he could not perform his job without accommodation. Kevin Tani, another manager, told the plaintiff that disability-related absences would not be tolerated.

On June 20, 1994, the plaintiff was disciplined for excessive absenteeism, which prohibited him from bidding or canvassing for other positions for a period of one year.

The defendant's attendance policy authorizes management to track absences for a

1. Caruthers alleges that the defendant never considered returning chairs to the production line as a possible accommodation. The defendant, however, submits evidence that the chairs were returned to the production lines in early March 1992. The plaintiff does not dispute that date.

2. The defendant concedes that it failed to offer Caruthers two positions that were posted in January 1994: Distribution Technician IV and Distribution Technician V. Based upon the defendant's position that Caruthers failed the clerical tests, the defendant did not offer him the following jobs for which the clerical tests were a prerequisite: SSC Coordinator, SSC Technician V, Advanced Buyer, Invoice Approval Technician VI, and Buyer. The defendant also did not consider the plaintiff for Converting Technician IV vacancies because that was the position he held when placed on leave and the defendant had determined that he could not work in that position.

one-year period. Prior to disciplining Caruthers, the defendant had tracked his absences from February 1989 through May 1994 and had compared him to other employees with disability or workers' compensation leave. When calculating Caruthers' attendance, the defendant included the plaintiff's disability-related absences, even the period during which he was on leave from October 1992 through May 1994. The defendant's policy, however, states that disability-related absences are not counted when tracking absences. Schwabauer acknowledged that the defendant disciplines employees for absences based upon disability or work-related injuries.

On February 8, 1996, Caruthers filed suit in the Wyandotte County, Kansas District Court against the defendant, who removed the case to federal court. In his amended complaint, the plaintiff alleges that the defendant maliciously or recklessly discriminated against him in violation of the ADA, ERISA, and FMLA. He claims that the defendant's conduct adversely affected his compensation, opportunities for advancement, raises, employee benefits, employee classification, and other terms and conditions of employment.

## Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 977 (10th Cir.1995); *F.D.I.C. v. 32 Edwardsville, Inc.,* 873 F.Supp. 1474, 1479 (D.Kan.1995). The existence of factual disputes is not an automatic preclusion to the grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The movant is entitled to judgment as a matter of law should the nonmoving party insufficiently establish an essential element of a claim for which the nonmovant has the burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 should be construed to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Id.* Entitlement to summary judgment must be proven beyond a reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

## Plaintiff's ADA Claim

Caruthers filed his administrative discrimination charge on January 31, 1994, alleging that he had been placed on leave in October 1992 because the defendant refused to accommodate his disability. The plaintiff's complaint, broadly construed, alleges that the defendant has engaged in a pattern and practice of discriminatory conduct in violation of the ADA.

The defendant argues that any claim arising from the October and November 1992 events is untimely. *See Amro v. Boeing Co.,* 951 F.Supp. 1533, 1553 (D.Kan.1997) ("To bring a cause of action under the ADA, an employee must file a discrimination charge with the state agency within 300 days after the alleged discriminatory act occurred."); *see also* 42 U.S.C. § 12117(a) (ADA, in the private employment context, incorporates the procedures and remedies of Title VII); 42 U.S.C. § 2000e–5(e)(1) (to file Title VII action, employee must file charge of discrimination with state agency within 300 days of the alleged discriminatory conduct). It is undisputed that the plaintiff filed his discrimination charge more than 300 days after the events in October and November 1992.

The defendant also claims that any conduct occurring before the ADA's effective date of July 26, 1992 does not violate the Act. *See Murphy v. United Parcel Serv.,* 946 F.Supp. 872, 877 (D.Kan.1996)(quoting *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 557 (D.Kan.1995)). ("The ADA became effective on July 26, 1992, and it does not apply retroactively."). The defendant further declares, without supporting authority,

that any conduct occurring after Caruthers filed his charge of discrimination is not relevant. According to the defendant, because the plaintiff filed his charge of discrimination on January 31, 1994, only conduct that occurred between April 6, 1993 and January 31, 1994 (300 days) can be considered.

Caruthers contends that the continuing violation doctrine and the theory of equitable tolling allow him to rely upon conduct occurring before April 6, 1993 to establish his ADA claim. *See Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995) ("Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, rather it is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling."). The plaintiff asserts that events occurring before April 6, 1993 may be considered as evidence of a continuing pattern and practice of discrimination. *See Bazemore v. Friday,* 478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) ("A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, it is liable under the statute."); *Morton v. GTE North, Inc.,* 922 F.Supp. 1169 (N.D.Tex.1996)("While a party is not entitled to damages for violations based on facts that occurred prior to the effective date, pre-effective date facts can be relevant regarding post-effective date violations.").

The court agrees that conduct occurring before April 6, 1993 "may constitute relevant background evidence." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The court also agrees that events occurring after the filing of administrative discrimination charges are relevant. *See Brown v. Hartshorne Pub. Sch. Dist. # 1,* 864 F.2d 680, 682 (10th Cir.1988) ("Courts have also held that acts committed pursuant to a pattern of discrimination challenged in an EEOC complaint, but occurring after its filing, are reasonably related to that complaint, and may be challenged in district court without filing another EEOC complaint."); *see also Martin*

*v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993) (citation omitted) ("consideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made").

To invoke the continuing violation doctrine, Caruthers must show "either (1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." *Purrington v. University of Utah,* 996 F.2d 1025, 1028 (10th Cir.1993) (citing *Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th Cir.1987)). To gauge whether acts outside the time limit are a continuing violation or are discrete unrelated acts, the Tenth Circuit applies three nonexclusive factors:

(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert [his or] her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Mascheroni v. Board of Regents of Univ. of Cal.,* 28 F.3d 1554, 1561 (10th Cir.1994) (quoting *Martin v. Nannie & Newborns, Inc.,* 3 F.3d 1410, 1415 (10th Cir.1993)).

Caruthers establishes a series of related acts taken against him, one or more of which falls within the limitations period. For purposes of this motion, the defendant concedes that the alleged violative incidents involve the same type of discrimination and the same subject matter. The court need not address the frequency factor because Caruthers fails to satisfy the permanence factor. The court finds unpersuasive the plaintiff's argument that the defendant lulled him into inactivity because the defendant gave the indicia of attempting to accommodate his disability.

In early 1992, the defendant removed chairs from the production lines, which the plaintiff maintains originally were put in place to accommodate his medical restrictions. Additionally, in February, April, and June 1992, managers for the defendant harassed him about his disability. In October 1992, the defendant placed Caruthers on leave, stating no jobs were available that would accommodate his physical limitations. Finally, Caruthers alleges that in December 1992 the defendant informed him that he passed the clerical tests only to inform him falsely one month later that he had not passed the tests. These events, particularly when considered together, should have triggered the plaintiff's awareness that he needed to assert his rights. *See Purrington,* 996 F.2d at 1028 ("Permanency depends on what the plaintiff knew or should have known at the time of the violation.").

■ With regard to equitable tolling, Caruthers alleges that the defendant lulled him into inactivity and actively deceived him concerning whether he had passed the clerical tests. The plaintiff's allegation does not satisfy Tenth Circuit precedent. The court of appeals has "explained that the time limits in Title VII 'will be tolled only if there has been "active deception" of the claimant regarding procedural prerequisites.'" *Mascheroni,* 28 F.3d at 1562 (quoting *Scheerer v. Rose State College,* 950 F.2d 661, 665 (10th Cir.1991), and *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982)). The Tenth Circuit has held tolling applicable in situations in which the plaintiff received a confusing right to sue letter or was misled about the right to sue or the filing dates. The court also has applied the tolling doctrine if the defendant's deliberate inactivity prolonged an inquiry into the complaint. *See Richardson v. Frank,* 975 F.2d 1433 (10th Cir.1991); *Brezovski v. United States Postal Serv.,* 905 F.2d 334 (10th Cir.1990); *Martinez v. Orr,* 738 F.2d 1107 (10th Cir.1984); *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir.1976)(ADEA), *aff'd per curiam by an equally divided court,* 434 U.S.

99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). Here, the active deception that the plaintiff imputes to the defendant is not related to procedural requirements.

Caruthers may not invoke the continuing violation or equitable tolling doctrines. Accordingly, he cannot seek damages for the defendant's allegedly discriminatory conduct occurring before April 6, 1993.[3] The plaintiff, however, has established a basis for a pattern and practice of discrimination sufficient to preclude summary judgment on his ADA claim.

*Plaintiff's FMLA Claim*

Caruthers further claims that the defendant improperly disciplined him for taking leave in 1993 and 1994 for a serious health condition in violation of the FMLA. The defendant contends that the plaintiff was not entitled to the FMLA's protection because he was not an "eligible employee." Under the FMLA, an eligible employee

means an employee who has been employed—

(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and

(ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).

The defendant argues that Caruthers is not an eligible employee because he worked no hours prior to being disciplined in June 1994. The plaintiff responds that the date for determining hours of service during the previous twelve months is the date the leave commenced, October 1992, rather than the date of discipline, June 1994.

■ In employment situations involving collective bargaining agreements, the FMLA became effective on February 5, 1994. *See* 29 U.S.C. § 2601 note; 29 C.F.R. § 825.102. Here, a collective bargain agreement governed the parties' employment relationship. Accordingly, the court finds that February 5, 1994 is the earliest date that Caruthers'

---

**3.** Such evidence may be probative of the defendant's alleged pattern and practice of discrimination after April 6, 1993.

**1490**

FMLA leave could have commenced. *See Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 93 (5th Cir.1996) (*per curiam*) ("Any leave taken prior to the effective date is not protected by the FMLA."); 29 C.F.R. § 825.103(a) (1996) ("An eligible employee's right to take FMLA leave began on the date that the Act went into effect for the employer."). To hold otherwise would require a retroactive application of the FMLA. Courts have found that the FMLA and its implementing regulations do not apply retroactively. *See, e.g., Schlett v. Avco Fin. Servs.*, 950 F.Supp. 823, 835 (N.D.Ohio 1996); *Burke v. Nalco Chemical Co.*, No. 96–981, 1996 WL 411456, at *3 (N.D.Ill. Jul. 18, 1996); *Thankachen v. Cardone Indus.*, No. 95–181, 1995 WL 580342, at *2 (E.D.Pa. Sept.28, 1995).

■ The facts are uncontroverted that Caruthers was on leave between February 1993 and February 1994. Time spent on leave, paid or unpaid, does not count towards the required hours of service. *See Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F.Supp. 18, 20–21 (D.D.C.1995); Family and Medical Leave Act, 60 Fed.Reg. 2180, 2186 (1995) (" 'Hours worked' does not include time paid but not 'worked' (paid vacation, personal or sick leave, holidays), nor does it include unpaid leave (of any kind) or periods of layoff. Whether the hours are compensated or uncompensated is not determinative for purposes of FMT–A's 1,250–hours–of–service test."). The plaintiff, therefore, cannot establish that he was an eligible employee entitled to the protection of the FMLA.

The court grants summary judgment to the defendant on the plaintiff's FMLA claim.

IT IS, THEREFORE, BY THE COURT ORDERED that the defendant's motion for summary judgment (Doc. 31) is denied on the plaintiff's ADA claim and is granted on the plaintiff's FMLA claim.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**