**William E. WELLS, Plaintiff,**

v.

**WAL–MART STORES, INC.,
et al., Defendants.**

**No. 00–4083–JAR.**

United States District Court,
D. Kansas.

Sept. 10, 2002.

David O. Alegria, McCullough, Wareheim & LaBunker, Topeka, KS, for Plaintiff.

Kelly S. Herzik, Morris, Laing, Evans, Brock & Kennedy, Chtd., Alan L. Rupe, S. Douglas MacKay, Georgina R. Adami, Husch & Eppenberger, LLC, Wichita, KS, for Defendants.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

This action is before the Court on the motion of defendants, Wal–Mart Stores, Inc. and Wal–Mart Associates, Inc. ("Defendants") for summary judgment (Doc. 96).[1] Plaintiff William Wells alleges that in retaliation for having sustained certain work-related injuries, he was discharged by Defendants in violation of the Kansas Workers Compensation Act, the American with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA). As set forth in detail below, Defendants' motion for summary judgment is denied as to Wells' retaliatory discharge claim and granted as to Wells' ADA and FMLA claims.

## I. Standard for summary judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[2] The court when applying this standard, views the evidence and all reasonable inferences therefore in the light most favorable to the nonmoving party.[3]

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[4] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[5] The nonmoving party may not rest on its pleadings, but must set forth specific facts.[6] Rather, the nonmoving party must "set forth facts that would be admissible on evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[7] "To accomplish this, the facts must be identified by reference to

1. Defendants have also filed a "Motion to Strike Supplemental Pleading" (Doc. 117) regarding a letter from plaintiff's counsel advising the court of a Tenth Circuit opinion that was published post-briefing. Counsel did not attempt to apply the opinion to the facts of this case, but merely advised the court as a courtesy. Defendants' motion is therefore denied.

2. Fed.R.Civ.P. 56(c).

3. Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir.1998)(citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

4. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986); Hicks v. City of Watonga, 942 F.2d 737 (10th Cir.1991).

5. Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc., 912 F.2d 1238, 1241 (10th Cir.1990)(quoting Celotex, 477 U.S. at 324, 106 S.Ct. 2548).

6. Id.

7. Adler, 144 F.3d at 671.

affidavits, deposition transcripts, or specific exhibits incorporated therein." [8]

The court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." [9] In making such a determination, the court should not weigh the evidence or credibility of witnesses.[10]

In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment motion.[11] If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[12] Summary judgment is not a disfavored procedural shortcut; "rather, it is an important procedure" designed to secure the just, speedy and inexpensive determination of every action.[13]

## II. Facts

William Wells was hired at the Wal-Mart Distribution Center in Ottawa, Kansas on October 2, 1995, in the non-conveyable freight department. In October 1996, Wells applied for a job as a forklift driver at the Ottawa facility. Wells was chosen from a list of applicants to fill a forklift driver position. As a forklift driver, Wells moved pallets containing merchandise through the distribution center.

Wells was injured in October 1997, and filed a medical report as a result of his injury. Wells re-injured his back in April or May 1998. Wells states that an employee "coach" of the Defendants discouraged Wells from filling out an incident report. As a result of the injury, Wells missed five months of work. Wells returned to work in October 1998, as a forklift driver in the Receiving Department. As a condition of his return to work, Wells' physician restricted him from lifting in excess of seventy-five pounds and from performing repetitive lifting from the floor. As a result of his injuries Wells filed workers compensation claims against Defendants in 1997 and in May 1998.

Defendants placed Wells in their Temporary Alternative Duty (TAD) program when he returned to work in October 1998. An injured employee is placed in the TAD program when the employee seeks medical attention for a possible work-related injury and a physician determines that the employee cannot continue in the full scope and parameters of his or her job. Under the program, employees are allowed to stay in the program up to 60 days, and upon expiration, Defendants' policy is to remove an employee from work duty until the physician releases the employee to full duty. Any exceptions to the 60–day limitation are considered on a case-by-case basis.

On January 15, 1999, Steve Harris, a Personnel Coach employed by the Defendants, determined that Wells had exceeded the 60–day maximum of the TAD program. Harris along with Barbara Clover, an employee from the Center's Benefit Department, and Mike Cromwell, the Center's Operations Manager, met with Wells and informed him that he had exceeded the maximum number of days allowed in the TAD program. In the meeting, Harris

8. *Id.*

9. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

10. *Travelers Ins. Co. v. Nixon,* 1991 WL 33516, *3 (D.Kan. Feb. 20, 1991).

11. *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

12. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

13. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

told Wells that he would be placed on workers compensation leave. Harris contends he told Wells to return to work on his next scheduled day after the doctor released him from his restrictions. Harris' notes from the meeting reflect that Wells had an appointment with Dr. Clymer, Defendants' workers compensation physician, on January 26, 1999.

Although Wells asserts that he was never in the TAD program and that he was not even aware of its existence until January 1999, his job responsibilities included taking reports for Wal–Mart associates who were injured on the job. On November 8, 1998, Wells signed an acknowledgment that he had read and understood the condition of the TAD program. Wells' duties in the receiving department included manually loading and unloading heavy equipment and boxes on and off trucks.

On February 1, 1999, Barbara Clover called Dr. Clymer to determine the status of Wells' release. Dr. Clymer ·informed Clover that he had released Wells to work on January 26, 1999. Clover then informed Steve Harris that the company physician had released Wells. Harris later determined that Wells had violated the Defendants' "three day no call, no show rule," which states that if an employee does not report to work or call in to the Defendants on three consecutive days, the employee will be terminated. It should be noted that while Dr. Clymer released Wells to work on January 26, Wells' personal physician had not released Wells to return to work at that time.

On February 1, 1999, Defendants mailed a letter to Wells informing him that he had been terminated for violating the "three day no call, no show rule." Wells called the Defendants and informed them that he was under the assumption that the Defendants would notify him when it was time

for him to return to work and that he was willing and able to return to his previous position. But, Defendants did not allow Wells to return to work at the distribution center.

A point of contention between the parties concerning the January 15, 1999, meeting is whether Steve Harris instructed Wells to inform the Defendants when he was released to return to work. The Defendants assert that it was Wells' responsibility to call them. Wells asserts that he was told by Harris that the Defendants would provide notification when they received notice from the physician that Wells was cleared to return to work. The November 8, 1998, TAD acknowledgment signed by Wells, while advising him of the 60–day program limit, did not specify from which physician he would obtain a release. Furthermore, the acknowledgment did not specify whether Wells had the responsibility to notify the Defendants of his release. Nothing in the record suggests that the Defendants specified which physician, the workers compensation physician or Wells' personal physician, could clear Wells to return to work.

On October 16, 1999, Wells filed a timely complaint with the Equal Employment Opportunity Commission (EEOC). Wells received a notice of right to sue letter on February 29, 2000. It is undisputed that Wells exhausted his required administrative remedies and filed this action.

### III. Discussion

#### Workers Compensation Retaliation

 Wells claims he was discharged in retaliation for filing a workers compensation claim. Kansas adheres to the "employment-at-will" doctrine, which states that an employer can discharge an employee at any time.[14] Kansas law recognizes an exception for the employee exercising

---

14. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779, 781 (Kan.1976).

his rights established under the Kansas Workers Compensation Act.[15] In order to prevail, Wells must prove that the discharge was "based on," "because of," "motivated by," or "due to" the employee's filing of the workers compensation claim.[16] Wells must establish his claim by a preponderance of evidence, "but the evidence must be clear and convincing in nature."[17]

Absent direct evidence of retaliatory intent[18] on the part of the employer, the Court evaluates retaliation discharge claims using the rules established in *McDonnell Douglas v. Green.*[19] Under *McDonnell*, Wells must establish a prima facie case demonstrating the employer's retaliatory intent by showing: (1) that he sustained an injury for which he might assert workers compensation benefits; (2) that the employer had knowledge or should have had knowledge that he sustained the injury; (3) that the employer terminated his employment; and (4) that a causal connection exists between the protected activity and the termination.[20] If Wells meets his burden of establishing a prima facie case, the burden shifts back to the Defendants to show "a legitimate, nondiscriminatory reason" for their action.[21] If the Defendants meet their burden, the burden shifts back to Wells, who is then required to show with clear and convincing evidence that the Defendants' stated reasons were a pretext for retaliation for Wells exercising his rights granted under the Workers Compensation Act.[22]

### a. Prima facie case

■ Defendants concede for purposes of this motion only that Wells has satisfied the first three elements of a prima facie case. The question before the Court is whether Wells satisfied the fourth requirement of a causal connection between his work-related injury and his discharge.

A plaintiff can establish a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[23] The Tenth Circuit has held that unless the employer's adverse action is closely connected in time to the protected conduct, the employee will need to produce additional evidence in order to show a causal connection.[24] For example, a one and one-half month period between the protected activity and the adverse action may, by itself, establish causation, but a three-month period, standing alone, is insufficient to establish causa-

---

15. *Ortega v. IBP, Inc.,* 255 Kan. 513, 874 P.2d 1188 (1994).

16. *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1298 (10th Cir.1998) (quoting *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 815 P.2d 72 (1991)).

17. *Ortega,* 874 P.2d at 1198.

18. Wells claims that Defendants' TAD program is discriminatory on its face and is direct evidence of intentional discrimination. Wells' argument is misplaced, however, because his claim is for retaliation, not discrimination.

19. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see, e.g., Lundien v. United Airlines,* 242 F.3d 389 (10th Cir.2000).

20. *Sanjuan v. IBP,* 160 F.3d at 1298.

21. *Murray v. City of Sapulpa,* 45 F.3d 1417, 1421 (10th Cir.1995).

22. *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1116 (10th Cir.2001).

23. *Burrus v. United Telephone. Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.1982).

24. *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (citing *Marx v. Schnuck Markets, Inc.* 76 F.3d 324, 329 (10th Cir.), *cert. denied* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996)).

tion.[25] Wells filed his second workers compensation claim in May 1998, and was discharged in January 1999; there was an eight-month interval between Wells' workmen's compensation claim and his discharge. The proximity in time between Wells' claim and his discharge is too remote to establish a nexus between the two events.

Because Wells has not shown a close temporal proximity between filing his workers compensation claim and his discharge, he must provide the Court with additional evidence that indicates a causal connection. Wells was terminated approximately two weeks after completion of the TAD program. Wells states in his deposition that the Defendants 1) did not follow company policy regarding Wells' dismissal when Steve Harris did not properly interpret the company's policies regarding notification upon release by a physician; 2) "badgered" Wells by pressuring him not to fill out a medical report; 3) told Wells that he was lying about his injury; 4) denied Wells access to a class that he had been approved to attend before his injury; and 5) allowed a supervisor to tell Wells that he was going to "kick his ass." These facts are sufficient to establish a prima facie case.[26]

### b. Defendants' Legitimate Reason

■ The burden then shifts to the Defendants to establish a legitimate, nonretaliatory justification for its termination of Wells' employment. Defendants have satisfied this burden by contending that Harris' decision was based on Wells' violation of the "3–day no call, no show rule." This is a legitimate reason to terminate Wells.

### c. Pretext

■ Because the Defendants have offered a legitimate reason for Wells' termination, the burden then shifts back to Wells to demonstrate that the Defendants' stated reason is pretextual. In order to avoid summary judgment, "the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is mere cover-up or pretext for retaliatory discharge."[27] "Although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"[28] To demonstrate pretext, a plaintiff should show more than "mere conjecture" that her employer's reason is insufficient.[29] The Tenth Circuit recently held that a plaintiff in federal court[30] who opposes a summary judgment in a retaliatory discharge case based on Kansas law must set forth evidence of a clear and convincing

**25.** *Id.*

**26.** *See Robinson v. Wilson Concrete Co.,* 913 F.Supp. 1476, 1483 (D.Kan.1996) ("A claimant's 'prima facie case is not an onerous burden under the *McDonnell Douglas* burden-shifting scheme.'")

**27.** *Bracken v. Dixon Indus., Inc.,* 38 P.3d 679, 682 (2002) (citing *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994)).

**28.** *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citation omitted and ellipses in original) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**29.** *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

**30.** Kansas courts will not apply the clear-and-convincing standard at the summary judgment stage in an action for retaliation in the state's own courts. *See Bracken,* 38 P.3d at 683.

nature that, if believed by the ultimate fact finder, would establish that plaintiff was more likely than not the victim of illegal retaliation by her employer.[31] Clear and convincing evidence does not require quantity, but requires that the quality of the evidence is clear enough to make the trier of fact believe it.[32]

Wells supports his showing of pretext with the same facts relied on to establish his prima facie case: (1) he was terminated approximately two weeks after completing the TAD program; Defendants (2) did not follow company policy regarding Wells' dismissal when Harris did not properly interpret the company's policies regarding notification upon release by a physician; (3) "badgered" Wells by pressuring Wells not to fill out a medical report; (4) told Wells that he was lying about his injury; (5) denied Wells access to a class that he had been approved to attend before his injury; and (6) allowed a supervisor to tell Wells that he was going to "kick his ass."

Defendants and Steve Harris deny that their dismissal of Wells was a retaliatory act. They also contend that if Harris did not interpret company procedures correctly, it was a mistake and not an intentional act of retaliation.

Viewing the evidence in a light most favorable to Wells and drawing reasonable inferences from that evidence, the Court finds that it is possible that a reasonable jury could find that the Defendants' proffered reason for Wells' discharge was a pretext for retaliation. The Court reiterates that a plaintiff does not need to show that the retaliation was the employer's sole motive or reason for termi-

nation.[33] "Accordingly, a plaintiff in a retaliatory discharge case need not prove that his employer's proffered, nonretaliatory motive for terminating his employment was a factual impossibility. Rather, a plaintiff can simply demonstrate that her discharge was 'based on,' 'because of,' 'motivated by,' or 'due to' the employer's intent to retaliate." Wells' evidence, if believed by the jury, is sufficient to do so. Defendants' Motion for Summary Judgment on the retaliatory discharge claim is denied.

### ADA

The ADA prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[34] When considering a claim brought under the ADA, the court is once again guided by the *McDonnell Douglas* analytical framework.[35] The first step requires a plaintiff to establish a prima facie case by proving: (1) that he or she is a disabled person within the meaning of the ADA; (2) that he or she is a "qualified individual," that is, he or she is able to perform the essential functions of the job with or without accommodation; and (3) he or she suffered adverse employment action because of the disability.[36]

A person is considered to have ADA disability if that individual (a) has physical or mental impairment that substantially limits one or more of the major life activities of such individual, (b) has a record of

---

**31.** *Foster v. Alliedsignal Inc.,* 293 F.3d 1187 (10th Cir.2002).

**32.** *Ortega,* 874 P.2d at 1198.

**33.** *Sanjuan,* 160 F.3d at 1298.

**34.** 42 U.S.C. § 12112(a).

**35.** *See Williams v. Widnall,* 79 F.3d 1003, 1005 n. 3 (10th Cir.1996) (explaining application of the analysis in cases under the ADA).

**36.** *Morgan v. Hilti, Inc.,* 108 F.3d at 1323.

such an impairment, or (c) is regarded by the employer as having such an impairment.[37] Wells appears to claim he is disabled only under subsection D, because he is regarded by Defendants as having a physical impairment that substantially limits his major life activities. However, the court will analyze Wells' claim under all three subsections.

### 1. Qualified Individual with a Disability

A three-step process is used to determine whether an individual is disabled under subsection (a) listed above.[38] The court must first determine if Wells suffers from a physical impairment.[39] Next, the court identifies the life activities affected by the impairment and determines whether they are major life activities under the ADA.[40] Finally, the court determines whether Wells' impairment "substantially limits" the major life activities identified in the previous step.[41]

■ Wells appears to contend he suffers from a permanent disability due to his back injuries. The Court assumes that Wells has a physical impairment for purposes of this analysis only.

Although the ADA does not define the term, "major life activities," subsequent regulation from the Equal Employment Opportunity Commission has given some guidance. These regulations adopt the definition of "major life activities" found in the Rehabilitation Act regulations. The term "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."[42] The term has also been expanded by subsequent interpretation to include "sitting, standing, lifting, and reaching."[43] In determining whether a particular activity constitutes a "major life activity," the court must ask "whether that activity *is significant within the meaning of the ADA*, rather than whether that activity is important to that particular individual."[44]

"[A] plaintiff must articulate with precision, the impairment alleged and the major life activity affected by that impairment."[45] The court "is to analyze only the major life activity asserted by the plaintiff."[46] Although Wells does not specifically identify the major life activity he claims has been limited by virtue of his physical disability, the Court will presume for purposes of this analysis that his major life activity is lifting.

Wells must show that his impairment "substantially limits" his identified major life activities.[47] The term "substantially

---

**37.** 42 U.S.C. § 12102(2).

**38.** *See Poindexter v. Atchison, Topeka & Santa Fe Railway, Co.*, 168 F.3d 1228, 1230 (10th Cir.1999) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)).

**39.** *Id.*

**40.** *Id.*

**41.** *Id.*

**42.** 29 C.F.R. § 1630.2(i).

**43.** 29 C.F.R. Pt. 1630, Appendix to Part 1630– Interpretive Guidance to Title I of the ADA, § 1630.2(i); *See also, Lowe v. Angelo's Italian*

*Foods, Inc.*, 87 F.3d 1170 (10th Cir.1996) (lifting is a major life activity.)

**44.** *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.), *cert. denied* 528 U.S. 811, 120 S.Ct. 45, 145 L.Ed.2d 40 (1999) (emphasis added).

**45.** *Poindexter,* 168 F.3d at 1232.

**46.** *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 496 (10th Cir.2000) (quoting *Poindexter,* 168 F.3d at 1231).

**47.** *Poindexter,* 168 F.3d at 1230.

limits" means that Wells is "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major lift activity." [48] Recent Supreme Court precedent defines "substantially limits" as "considerably" or "to a large degree." [49] In making the determination, the following factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, with the expected permanent or long-term impact of or resulting from the impairment. [50]

Wells fails to establish that his seventy-five pound lifting restriction is significant when compared to the average person in the general population. [51] The Tenth Circuit has held that a forty-pound lifting restriction alone does not, as a matter of law, substantially limit a plaintiff's major life activity of lifting. [52] The Court finds that Wells has failed to present sufficient evidence that he was substantially limited in his ability to lift.

## 2. Record of Impairment

■■■ Wells contends that he had a record of impairment from his 1996 back injury, his subsequent two back injuries and his neck injury, and that he received ongoing medical treatment for an extended period of time. In order to establish a record of impairment, "... the impairment indicated in the record must be one that substantially limits a major life activity." [53]

In this case, the only evidence of Wells' record of impairment is doctor's records of his lifting restrictions. As previously discussed, the lifting limitation does not substantially limit a major life activity. Wells' claim that he has a record of impairment is without merit. [54]

## 3. Regarded as Disabled

■■■ Wells argues that he was perceived to have a disability and that Defendants considered him "unfit" to continue working. A person is regarded as having an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. [55] "A person is regarded as disabled within the meaning of the ADA if (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that a

**48.** 29 C.F.R. § 1630.2(j)(1).

**49.** *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

**50.** *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir.2001).

**51.** *Reese v. Owens–Corning Fiberglas,* 962 F.Supp. 1418 (D.Kan.1997).

**52.** *Lusk,* 238 F.3d at 1240–1241 (forty pound lifting restriction is not substantially limiting on its face); *see also, Gibbs v. St. Anthony*

*Hosp.,* 1997 WL 57156, 107 F.3d 20 (10th Cir.1997) (twenty-five pound repetitive lifting restriction and thirty pound occasional lifting restriction, without more, insufficient to establish substantial limit on major life activity).

**53.** *Lusk,* 238 F.3d at 1241 (citing *Sorensen v. University of Utah Hospital,* 194 F.3d 1084, 1087 (10th Cir.1999)).

**54.** *Lusk,* 238 F.3d at 1241 (medical records of lifting restriction, without more, do not establish record of impairment under the ADA),

**55.** *Id.; see also* 42 U.S.C. § 12102(2)(B).

person's actual, non-limiting impairment substantially limits one or more major life activities." [56]

Wells proffers no evidence that Defendants misperceived the extent of his limitations. The only evidence Wells appears to offer is the fact that Defendants were aware of his injuries. This is insufficient to demonstrate that Defendants regarded Wells as disabled. Knowledge of a person's injury does not equate to regarding the person as disabled.[57] Further, the fact that Defendants were aware of the injury does not establish that Defendants believed that .Wells' injuries substantially limited any major life activity. In this case, Wells gave Defendants a list of doctor's restrictions that Defendants honored. "Where the recognition of plaintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that plaintiff was regarded as disabled is inappropriate." [58] Wells has not established that Defendants regarded him as disabled.

Viewing the evidence in the light most favorable to Wells, the Court finds that he has failed to establish a genuine issue of material fact as to whether he was "disabled" within the meaning of the ADA. Because of this finding, it is unnecessary to discuss the parties' remaining arguments. Summary judgment is granted with respect to Wells' ADA claim.

## FMLA

■ Wells contends that Defendants fired him in violation of the Family and Medical Leave Act (FMLA).[59] The FMLA provided eligible employees up to 12 weeks of leave during any 12–month period so that they may care for a relative, welcome a new child, or "because of a serious health condition." [60] The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of such rights, or to discharge or in any other manner discriminate against" individuals who oppose such interference.[61] In order to present a prima facie case for FMLA interference, a plaintiff must show that he is entitled to FMLA leave and that his employer interfered with, restrained or denied the exercise of his rights under the Act.[62]

■ Defendants argue that Wells was not entitled to FMLA leave because he did not work the required hours of service. To qualify as an eligible employee under the FMLA, the employee must be employed for at least 12 months by the employer to whom leave is requested and provide that employer with at least 1,250 hours of service during the previous 12 month period.[63] Time spent on leave, paid or unpaid, does not count towards the required hours of service, nor does paid vacation, personal or sick leave or holiday time.[64] Defendants contend that in the

56. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also Sorensen*, 194 F.3d at 1088.

57. *Kidwell v. Board of County Comm'rs of Shawnee County*, 40 F.Supp.2d 1201, 1221 (D.Kan.1998).

58. *Lusk*, 238 F.3d at 1241; *see also Yeske v. King Soopers, Inc.*, 2001 WL 744953 *1, 13 Fed.Appx. 802 (10th Cir.2001) (evidence that employer had put employee on medical leave of absence pending identification of position he could perform with restrictions is not evidence that plaintiff was regarded as disabled).

59. 29 U.S.C. § 2601 *et seq.*

60. 29 U.S.C. § 2612(a)(1)(A)-(D).

61. 29 U.S.C. § 2615(a)(1)-(2)

62. *See Mardis v. Central Nat'l Bank & Trust of Enid*, 1999 WL 218903, 173 F.3d 864 (1999) (citing *Dawson v. Leewood Nursing Home, Inc.*, 14 F.Supp.2d 828, 832 (E.D.Va.1998)).

63. 29 U.S.C. § 2611(2)(A).

64. *Caruthers v. Proctor & Gamble Mfg. Co.*, 961 F.Supp. 1484, 1490 (D.Kan.1997) (citing FMLA, 60 Fed.Reg. 2180, 2186 (1995)).

12–month period preceding the date Wells was placed off work, January 15, 1999, he worked only 993.04 hours. Plaintiff does not dispute that he failed to work the requisite hours, but rather, argues that Defendants failed to prove that Wells did not work the required number of hours. Wells' allocation of the burden of proof is mistaken; as plaintiff, it is his burden to demonstrate that he is an eligible employee under the FMLA.[65] Because Wells fails to meet his burden, his FMLA claim fails.

Wells argues that Defendants are estopped from contesting his eligibility under the FMLA because Steve Harris, Defendants' human resources manager, placed Wells on "workers compensation/FMLA leave" on January 15, 1999. Wells offers no support for this proposition. The Court finds that Wells' reliance on Defendants' mistake, if there was a mistake, could not have been reasonable because he plainly was not eligible for any benefits under the FMLA.[66] Accordingly, summary judgment is granted on Wells' FMLA claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' motion for summary judgment (Doc. 96) is GRANTED as to plaintiff's ADA and FMLA claims;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is DENIED as to plaintiff's retaliatory discharge claim.

**IT IS SO ORDERED.**

---

**65.** *Goodwin–Haulmark v. Menninger Clinic, Inc.,* 76 F.Supp.2d 1235, 1241 (D.Kan.1999).

**66.** *See Dimond v. J.C. Penney Company, Inc.,* 116 F.3d 489, 1997 WL 337509 *2 (10th Cir. 1997) (plaintiff who did not dispute he did not work long enough to qualify for FMLA bene- fits not entitled to rely on employer's mistaken belief to the contrary); *see, e.g., Cannon v. Group Health Service of Okla., Inc.,* 77 F.3d 1270, 1277 (10th Cir.) (noting equitable estoppel based on reasonable reliance), *cert. denied,* 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996).