**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RYSZARD KOWALCZYK,

       Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,

       Respondent.

No. 99-9541

**PETITION FOR REVIEW OF AN ORDER**
**OF THE BOARD OF IMMIGRATION APPEALS**
**(No. A28 464 269)**

John S. Castellano, Holland & Hart LLP, Denver, Colorado, for the petitioner.

Anthony C. Payne, Attorney, Office of Immigration Litigation (David V. Bernal, Assistant Director, Office of Immigration Litigation; Kristin A. Cabral, Attorney, Office of Immigration Litigation, with him on the brief), Washington, D.C., for the respondent.

Before **SEYMOUR**, **McKAY** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Petitioner Ryszard Kowalczyk appeals from a final order of exclusion entered by the Board of Immigration Appeals ("BIA") denying his request for asylum and withholding of deportation under the Immigration and Nationality Act ("INA"), see 8 U.S.C. § 1158(a). The BIA filed the order on October 18, 1999, affirming the decision of an immigration judge ("IJ") entered almost ten years before on February 14, 1990. Exercising jurisdiction pursuant to 8 U.S.C. § 1105a(a) (1994), [1] we reverse the decision of the BIA, vacate its order, and remand for further proceedings.

## I

At the age of thirty-two, Kowalczyk came to the United States to join the crew of a fishing vessel run by his employer, a state-owned Polish fishing company. He arrived in Anchorage, Alaska, on August 15, 1989 and, along with eight others, informed immigration authorities that he wished to apply for

---

[1] Our review under 8 U.S.C. § 1105a(a) (1994) is modified by the transitional rules for judicial review contained in section 309(c)(4) of the Omnibus Consolidated Appropriations Act of 1997 ( see Illegal Immigration Reform and Immigrant Responsibility Act of 1996), Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) , as amended by the Extension of Stay in the United States for Nurses Act, Pub. L. 104-302, § 2, 110 Stat. 3656 (Oct. 11, 1996), and the Nicaraguan Adjustment and Central American Relief Act, Pub. L. 105-100, § 202, 111 Stat. 2193 (Nov. 19, 1997)).

asylum.[2]  Petitioner was immediately placed in exclusion proceedings and taken to Denver, Colorado, for detention and hearings.[3]

During his asylum proceedings, Kowalczyk alleged he had been beaten by the Polish secret police and the militia for his membership and participation in the activities of the labor union Solidarity.  He further alleged that because of his membership in Solidarity he was the target of repeated surprise searches for a period of five years.  He described one incident in 1989 when he and his son were detained by the militia because he was carrying a bag with the Solidarity logo. He was interrogated for hours and beaten in front of his son.  After the incident, he claims his son wet his pants every time he saw a Polish soldier and had nightmares.  Petitioner further alleged that the 1989 incident caused him to join Fighting Solidarity, an uncompromisingly anti-Communist organization.

When offered the opportunity to travel to the U.S. as part of his job, petitioner seized it, and before he left he posted a letter to the local militia criticizing them for their brutality.  When the government learned of petitioner's defection, they attacked his defection (as well as those of the other eight sailors who defected) on television and called his wife to inform her to expect

_____

[2]  Five of the nine sailors requested asylum before entering the United States.  The other four, including Kowalczyk, requested asylum after entering.

[3]  Petitioner subsequently was released from detention and remains free.

disciplinary proceedings against him. Shortly after petitioner defected, Solidarity became part of the Polish coalition government.

In proceedings that began in September 1989 and concluded in February 1990, an IJ heard and denied petitioner's application for asylum and withholding of deportation. The IJ found Kowalczyk's claim of past persecution failed and denied his claim of a well-founded fear of persecution. Kowalczyk filed a timely notice of appeal to the BIA in March 1990.

More than nine years after Kowalczyk filed his notice of appeal and many years after the appeals of his co-workers who defected at the same time were decided, see, e.g. , Kapcia v. INS , 944 F.2d 702 (10th Cir. 1991) (affirming the BIA's decision regarding Kapcia and Saulo, who applied for asylum at the same time as Kowalczyk), on October 18, 1999, the BIA finally denied Kowalczyk's application for asylum and withholding of deportation and dismissed his appeal. The BIA reviewed the record de novo and found, as had the IJ, that petitioner failed to establish a well-founded fear of persecution and that he failed to demonstrate any past persecution so severe that repatriation would be inhumane. Integral to its decision was the fact, administratively noticed, that Poland has transitioned "from a communist state to a functioning, multiparty democracy." In re Kowalczyk , File A28 464 269, slip decision at 3 (BIA Oct. 18, 1999) (unpublished). "Given these sweeping political changes and the fact that the

communists no longer control Poland, . . . the applicant's fears of being persecuted by Polish governmental authorities on account of his support for Solidarity and Fighting Solidarity, and his opposition to the communists, are not well founded." Id. at 4.

In his appeal to this Court, Kowalczyk raises four issues. He argues that the BIA violated his Fifth Amendment right to due process by taking administrative notice of political changes in Poland and by relying on those facts to deny his application without giving him an opportunity to respond. Second, he asserts that the government should be equitably estopped from denying his application because the more than nine years it took for the BIA to render a decision constituted affirmative misconduct. He also claims his right to a fair hearing was violated by the IJ's refusal to consider evidence entered at the asylum hearings. And finally, Kowalczyk argues that he is statutorily eligible for asylum.

**II**

**A.  Administrative Notice**

We first address Kowalczyk's argument that in taking administrative notice of the purported changes in the Polish government without affording him an opportunity to respond, the BIA violated his Fifth Amendment right to due process. It is well established that "even those charged with entering the country illegally, are entitled to due process when threatened with deportation." Llana-

Castellon v. INS, 16 F.3d 1093, 1096 (10th Cir. 1994) (citing cases). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotations and citations omitted).

This is not the first time we have considered the constitutionality of taking administrative notice of facts during immigration proceedings, see Llana-Castellon, 16 F.3d at 1096–1101; Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992), nor is it the first time we have considered the constitutionality of taking administrative notice of the changes that occurred in the Polish government in 1990 and beyond. See Kapcia, 944 F.2d at 705–06. In accordance with our sister circuits, we have held that the BIA may take administrative notice of commonly acknowledged facts, which may include "current events bearing on an applicant's well-founded fear of persecution." Kapcia, 944 F.2d at 705 (quoting Kaczmarczyk v. INS, 933 F.2d 588, 593–94 (7th Cir. 1991)); see also Gebremichael v. INS, 10 F.3d 28, 37 (1st Cir. 1993) (collecting cases). Specifically, in Kapcia we concluded that because "Solidarity is [now] a part of the Polish coalition government, the [BIA] properly took notice of this fact and reasonably inferred that, generally speaking, Solidarity members will not be persecuted." Kapcia, 944 F.2d at 706 (agreeing with the Seventh Circuit's

conclusions in Kubon v. INS, 913 F.2d 386, 388 (7th Cir. 1990), and Kaczmarczyk, 933 F.2d at 594).

However, "simply because we have approved of [taking administrative notice] in one context does not mean that it is appropriate in all. An agency's discretion to take administrative notice depends on the particular case before it." Llana-Castellon, 16 F.3d at 1097; see also Castillo-Villagra v. INS, 972 F.2d 1017, 1027 (9th Cir. 1992) ("[T]he administrative desirability of notice as a substitute for evidence cannot be allowed to outweigh fairness to individual litigants."). More importantly, in cases in which taking administrative notice may be appropriate, this does not supplant the requirement that an individual must have notice and an opportunity to "rebut the inferences drawn." Kapcia, 944 F.2d at 705; see also Gebremichael, 10 F.3d at 39 (holding petitioner's due process rights were violated when he was not given opportunity to respond to a fact newly noticed by the BIA prior to an adverse decision against him); Kaczmarczyk, 933 F.2d at 596 ("We believe the due process clause of the fifth amendment requires that petitioners be allowed an opportunity to rebut officially noticed facts . . . . [N]ot to allow petitioners an opportunity to rebut noticed facts would sanction the creation of an unregulated back door through which unrebuttable, non-record evidence could be introduced against asylum petitioners outside of the statutorily-mandated hearing context . . . ." (citation omitted)); Castillo-Villagra, 972 F.2d at

1029 (holding that the BIA "erred in taking notice of the change of government without providing the petitioners an opportunity to rebut the noticed facts" because "due process requires that the applicant be allowed an opportunity to rebut [administratively noticed facts]"). [4] Accordingly, in Kapcia, we found the petitioners' due process rights were not violated when the BIA took administrative notice of Solidarity's inclusion in the new Polish coalition government; our holding was premised on the fact that "petitioners had ample opportunity to address" the facts noticed. Kapcia, 944 F.2d at 705. The changed conditions in Poland were first noticed during the proceedings before the IJs, and petitioners presented extensive expert witness testimony to rebut the inferences drawn from such changes.

We hold that, under the facts of this case, the BIA abused its discretion. Unlike the petitioner in Kapcia, Kowalczyk never had an opportunity to respond to some of the facts that were administratively noticed. Although Kowalczyk did

---

[4] In Kaczmarczyk, the Seventh Circuit held that motions to reopen immigration procedures allow asylum seekers sufficient opportunity to respond to administratively noticed facts and thereby satisfy the requirements of due process. 933 F.2d at 597. Accordingly, because petitioners in that case did not file motions to reopen and made no excuses for their behavior, the court concluded their constitutional challenges were without merit. Id. We have rejected the reasoning in Kaczmarczyk that "reopening procedures . . . protect an alien's due process rights, particularly because the BIA [can] deport the petitioner before considering the motion to reopen." Llana-Castellon, 16 F.3d at 1100. We concluded that "[a] petitioner's due process rights are not protected by a procedure that depends entirely on the good faith of the BIA." Id.

- 8 -

respond to the changing political climate at the time of his hearing and filing of appeal in 1989 and 1990, he never had an opportunity to respond to facts that did not exist until nine years after he filed his timely appeal. The BIA's order relies on a congressional report from 1999 to support the fact that "'[t]he internal security forces and the armed forces are subject to effective civilian control by the government' and that generally speaking, the Government respects the human rights of its citizens." Kowalczyk , File A28 464 269, at 4 (citing Department of State, 106th Cong., II Country Reports on Human Rights Practices for 1998 1405 (Joint Comm. Print 1999)). Kowalczyk argued to the BIA that the changes in the Polish government had not proliferated through the security forces and militia. (See, e.g. , Administrative R. at 33 ("Despite the recent changes in the makeup of the Polish Parliament, Solidarity is powerless to stop continued human rights abuses at lower government levels."); see also id. at 34.) To notice facts not presented to Congress until 1999 without providing petitioner an opportunity to respond, despite the more than nine years it took the BIA to decide Kowalczyk's appeal, violates Kowalczyk's Fifth Amendment right to due process. One would think that in those nine years there was ample opportunity both for the BIA to present Kowalczyk with any new evidence it intended to consider and to allow him time to respond. Moreover, if the delay was caused because petitioner's case was so difficult to review and decide based on the record, any new facts

established during the nine-year period certainly should have been presented to petitioner for his response. We simply cannot find that the "agency's discretion [was] exercised in such a way as to be fair in the[se] circumstances" and in such a way that satisfies the constitutional mandate of due process. Llana-Castellon, 16 F.3d at 1097 (quoting Castillo-Villagra, 972 F.2d at 1028). The administrative notice of facts key to petitioner's asylum claim coupled with the enormous amount of time in which the BIA could have given petitioner the opportunity to respond but did not establish that petitioner's due process rights were compromised. Accordingly, we reverse the BIA's decision, vacate the order of exclusion, and remand for further proceedings consistent with this opinion.

### B. The BIA's Delay

Kowalczyk further argues that the BIA should be equitably estopped from enforcing its exclusion order against him because the nine years it took to decide his appeal constituted affirmative misconduct. We are mystified by the amount of time it took the BIA to decide petitioner's appeal, particularly in light of the relatively quick disposal of the similar applications by his co-workers who defected at the same time. Furthermore, we are wholly unconvinced and nonplused by the government's argument that "[t]here is no proof that the lengthy time spent in processing his appeal was . . . unwarranted given the inordinate size of the administrative record . . . . It is only the operation of the administrative

judicial process that has caused 'delay.'" (Respondent's Br. at 21.) Nevertheless, under the present state of the record we can not conclude that equitable estoppel lies against the government in this case.

Equitable estoppel allows one party to prevent another "from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." Penny v. Giuffrida, 897 F.2d 1543, 1545 (10th Cir. 1990) (summarizing estoppel law and focusing on estoppel against the government). The elements of estoppel against a private party are "(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury." Id. at 1545–46.

Equitable estoppel does not lie against the government in the same manner as it does against private litigants. Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419 (1990). "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). In the course of rejecting estoppel arguments asserted against the government, the Supreme Court has indicated that

estoppel may lie against the government if some type of "affirmative misconduct" can be shown. See INS v. Hibi , 414 U.S. 5, 8 (1973) (per curiam). The Court has repeatedly "le[ft] for another day whether an estoppel claim [can] ever succeed against the Government." Office of Personnel Mgmt. , 496 U.S. at 423; see also Heckler , 467 U.S. at 60; id. at 67–68 (Rehnquist, J., concurring in the judgment) (stating that the majority's opinion "gives an impression of hospitality towards claims of estoppel against the Government which our decided cases simply do not warrant"); INS v. Miranda , 459 U.S. 14, 19 (1982) (per curiam); Schweiker v. Hansen , 450 U.S. 785, 788 (1981) (per curiam); Montana v. Kennedy , 366 U.S. 308, 314 (1961).

Supreme Court jurisprudence establishes that estoppel against the government in the immigration context has a particularly high bar. For instance, in Miranda , 459 U.S. at 18–19, the Court held the government was not estopped from enforcing the immigration laws because of an eighteen-month delay incurred while the INS considered a spousal immigrant visa application. "Proof only that the Government failed to process promptly an application falls far short of establishing [affirmative misconduct.]" Id. at 19. Undoubtedly, the eighteen-month delay at issue in Miranda pales in comparison to the more than nine-year delay involved in this case. As the Court made clear in Miranda , however, the immigration laws are of exceptional public interest and the courts must give

- 12 -

"[a]ppropriate deference" to the INS.     Id. ("An increasingly important interest, implicating matters of broad public concern, is involved in cases of this kind. Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult.  Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws.  Appropriate deference must be accorded its decisions." (citations omitted));     id. at 18 ("Montana  and  Hibi  make clear that neither the Government's conduct nor the harm to the respondent is sufficient to estop the Government from enforcing the conditions imposed by Congress for residency in this country.");     see also  INS v. Pangilinan , 486 U.S. 875, 883–84 (1988) (discussing the unavailability of equitable estoppel against the government in a naturalization case, explaining that administration of the immigration laws is best left to the agencies, and stressing that courts can not interfere in a manner inconsistent with applicable statutes).

Against the background of a Supreme Court jurisprudence which raises an extremely high bar to claims of equitable estoppel against the government, particularly in the immigration context, we conclude in light of the facts in the record before us that equitable estoppel would not prevent the BIA from enforcing its order in this case.    Cf. Che-Li Shen v. INS  , 749 F.2d 1469, 1473–74 (10th Cir. 1984) (holding that the INS was not equitably estopped from deporting petitioner where it took three years to rule on petitioner's first application and

- 13 -

almost two years to rule on petitioner's renewed application; relying in part on the fact that petitioner failed to demonstrate affirmative misconduct because there was "no indication that the [administrative] delay was deliberate or even unwarranted"); Roman v. INS , 233 F.3d 1027, 1033–34 (7th Cir. 1999) (holding the BIA was not equitably estopped from denying asylum after a five-year delay in considering petitioners' appeal because the court failed to find any prejudice from the delay).  We are deeply troubled by the nine-year delay and see it as a malfunction of the administrative process instead of, as the government argues, "the operation of the administrative judicial process."  (Respondent's Br. at 21.) In the absence of a showing that the delay in the present case was deliberate or resulted in identifiable prejudice to the petitioner's case, however, the delay is insufficient to demonstrate affirmative misconduct necessary to equitably estop the government from administering the immigration laws entrusted to its enforcement by Congress.  [5]

---

[5] We emphasize that our review is conducted under the INA and not under the Administrative Procedure Act ("APA").  Unlike the INA, the APA includes a judicially enforceable duty to proceed within a reasonable time.  See 5 U.S.C. §§ 555(b), 706(1).  See also Cutler v. Hayes, 818 F.2d 879, 894–900 (D.C. Cir. 1987) (remanding for district court to determine whether FDA's delay violated the requirement to act within a reasonable time and discussing factors to be considered by the district court in assessing the claim of unreasonable delay).

## C. IJ's Refusal to Consider Documents

Kowalczyk claims that his right to a fair hearing was violated by the IJ's refusal to consider certain documents offered at the asylum hearing. The IJ concluded that those documents addressed "subject matter in which the Court has no jurisdiction over as [it is] not in a policy making position." (Administrative R. at 104.) In its de novo review, the BIA agreed with Kowalczyk that the materials should have been considered by the IJ and considered the materials itself before affirming the denial of Kowalczyk's application. Kowalczyk, File A28 464 269, at 4 n.7.

We review only the decision of the BIA and not that of the IJ. Luna-Rodriguez v. INS, 104 F.3d 313, 315 (10th Cir. 1997). Because the BIA considered the contested materials in its review of Kowalczyk's application, and because the IJ's decision is not properly before us, we decline to hold that petitioner's fair trial rights were violated by the IJ's decision.

## D. Eligibility for Asylum

Kowalczyk's final claim is that he is "statutorily eligible for asylum on the basis of a well-founded fear of future persecution, alone or in combination with past persecution." (Petitioner's Br. at 17.) It is not necessary for us to reach this claim because the BIA will be required to reconsider its previous determination in

- 15 -

light of any responses submitted by Kowalczyk to the administratively noticed facts.

## III

The decision of the BIA dismissing petitioner's appeal is **REVERSED**, the BIA's order is **VACATED**, and the cause is **REMANDED** for further proceedings consistent with this opinion.