F I L E D
United States Court of Appeals
Tenth Circuit

FEB 16 2005

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELOY RIOS,

        Plaintiff-Appellant,

v.

JAMES ZIGLAR, COMMISSIONER
OF BUREAU OF CITIZENSHIP
AND IMMIGRATION SERVICES,

        Defendant-Appellee.

No. 04-3009

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 02-CV-1226)**

---

James S. Phillips, Jr., Wichita, Kansas, for Plaintiff-Appellant.

Eric F. Melgren, United States Attorney, and Laurie K. Kahrs, Assistant United States Attorney, for the United States.

---

Before **McCONNELL** , **HOLLOWAY** , and **TYMKOVICH** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

      We abated oral argument in this appeal after Plaintiff-Appellant's counsel was disbarred.  Upon notification from Plaintiff-Appellant that he will not seek

replacement counsel and that he wishes to have his appeal considered on the record, we ordered this matter submitted for disposition on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

Plaintiff-Appellant Eloy Rios appeals the district court's dismissal of his petition for writ of mandamus for lack of subject-matter jurisdiction and the dismissal of his claim for declaratory and injunctive relief for failure to state a claim. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

I.

Eloy Rios is a native of Nicaragua. The Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. 105-100, 111 Stat. 2160, 2193 (1997) (amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997)), permitted undocumented Nicaraguan nationals to adjust their status to that of lawful permanent residents. Regulations promulgated under NACARA required that proper applications to adjust status be received before April 1, 2000. 8 C.F.R. § 245.13(g). Mr. Rios and his family applied for adjustment of status under NACARA. On March 27, 2000, the INS Mesquite, Texas Servicing Center received and date-stamped three Form I-485 applications to register permanent residence or adjust status under NACARA for Mr. Rios, his wife, and his nineteen-year-old son. A check written by Mr. Rios's wife for $580.00 was

attached to the applications.  The correct fee was $1,385.00.[1]

Because the applications did not include a correct filing fee, the INS sent

Mr. Rios a notice of rejection, dated April 13, 2000, which reads in its entirety:

> The above application or petition, along with any check or other form
> of fee payment, is attached.  The application or petition cannot be
> accepted because the proper fee of $245.00 U.S. is not attached.
> Since the case is not properly filed, a priority or processing date
> cannot be assigned.
>
> Please attach a check or money order for this amount and resubmit
> this entire package to the address listed below.  To speed processing,
> please leave this notice on top.

Notice of Action (April 13, 2000), Aplt. App. 58.  Mr. Rios resubmitted his

application on September 9, 2000.  The INS rejected this application because it

was filed after the March 31, 2000 deadline.  Mr. Rios submitted a third

application on August 14, 2001.  On August 23, 2001, the INS rejected the

application for the same reason.  On November 7, 2001, Mr. Rios submitted his

application again as part of a motion to reopen.  The INS denied his motion to

reopen on November 30, explaining that his application had not been denied.  Mr.

---

[1]  Mr. Rios submits that the correct fee for an applicant over the age of
fourteen was $245.00, plus $50.00 for fingerprinting.  Both parties cite a copy of
Mr. Rios's wife's I-485 form, which is partially obscured by her check for
$580.00, which is itself partially obscured by a piece of paper with her address
typed in the upper left-hand corner, which partially obscures a receipt with three
entries of $245.00, one illegible entry that appears to be for $245.00, one entry of
$150.00, and an entry of $1,385.00.  The last figure is circled in pen and
accompanied by a note reading, "Total Amount Required."  Aplt. App. 53.
Neither Mr. Rios nor the government explains how they reached the total fee of
$1,385.00.

Rios did not apply for, and the INS did not grant, a waiver of the filing fee for his application for adjustment of status under NACARA. On June 30, 2002, Mr. Rios filed a complaint in the United States District Court for the District of Kansas seeking a writ of mandamus, declaratory relief, and a mandatory injunction directing the INS to process his NACARA application.[2] The government filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, for summary judgment. The district court granted the government's motion, dismissing the petition for writ of mandamus for lack of subject matter jurisdiction and dismissing his claim for injunctive relief for failure to state a claim. Order at 3–4. We review the district court's grant of a motion to dismiss de novo. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1206 (10th Cir. 1999).

## II.

Mr. Rios advances two principal arguments on appeal.[3] First, he claims that

---

[2] The Complaint also stated a claim that the INS unreasonably delayed processing of his application for political asylum. The parties settled this claim, and the government is currently processing Mr. Rios's application for asylum.

[3] On the last page of his brief, Mr. Rios states, "The right to pursue a legal remedy is a right protected by the due process [clause] of the Fifth Amendment." Appellant's Br. 8. Plaintiff cites no legal authority and advances no argument in support of a Fifth Amendment due process claim. To make a sufficient argument on appeal, a party must advance a reasoned argument concerning each ground of the appeal, *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992), and it must support its argument with legal authority. *Phillips v. Calhoun*, 956

(continued...)

4

the district court erred in dismissing his petition for writ of mandamus because he raised a genuine issue of fact concerning his right to relief. He argues that NACARA and its accompanying regulations permit an applicant to correct defects in his application after the filing deadline provided that the application was submitted before the deadline. He also argues that he included sufficient funds for his own application in the original submission on March 27, 2000. Second, Mr. Rios claims that the court erred in dismissing his claim for declaratory and injunctive relief because the government was estopped from claiming that his application was untimely.[4] He maintains that the government's rejection notice led him to believe that he could resubmit his application with the correct application fee after the filing deadline. He also suggests that the government took conflicting positions regarding his application. Both of these claims lack merit.

A.     *Subject-Matter Jurisdiction over the Petition for Writ of Mandamus*

Mr. Rios concedes that the filing fee attached to the March 27, 2000

---

[3](...continued)
F.2d 949, 953–54 (10th Cir. 1992). Mr. Rios has not made a cognizable due process argument.

[4] Mr. Rios argues, under a separate heading, that the INS "waived any objection to the filing of the plaintiff's NACARA application when it extended the time for plaintiff to file for adjustment of status or admission to the United States." Appellant's Br. 7. We agree with the government that Mr. Rios's waiver claim merely restates his equitable estoppel claim. We consider the arguments regarding waiver as arguments for equitable estoppel.

applications was insufficient. He argues, nonetheless, that he has a right to a protected filing date of March 27, 2000, and he seeks a writ of mandamus directing the INS to process his NACARA application. The district court dismissed Mr. Rios's petition for writ of mandamus for lack of subject matter jurisdiction, finding that Mr. Rios had not established a clear right to relief. Op. 3. We affirm the dismissal of Mr. Rios's petition on other grounds.

The Mandamus Act provides, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy. *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990). Once the petitioner has established the prerequisites of mandamus relief, the court may exercise its discretion to grant the writ. *Marquez-Ramos v. Reno*, 69 F.3d 477, 479 (10th Cir. 1995). The determination whether the mandamus factors are met is reviewed de novo; the exercise of discretion is reviewed for abuse of discretion. *Id.*

The court's jurisdiction over a mandamus petition depends on the character of the government's duty to the petitioner. *Id.* ("[T]he question of whether a

6

particular act is discretionary or ministerial rises to the jurisdictional level."). "The test for jurisdiction is whether mandamus would be an appropriate means of relief." *Carpet, Linoleum & Resilient Tile Layers v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981). If the duty is "ministerial, clearly defined and peremptory," mandamus is appropriate. *Id.* at 566 (quoting *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976)).

In Mr. Rios's case, mandamus is an appropriate form of relief. Mr. Rios alleges that the INS improperly refused to process his application to adjust status under NACARA. The government does not contend that processing applications is a discretionary function. It argues that Mr. Rios failed to file a proper application. For purposes of mandamus jurisdiction, however, the petitioner's allegations, "unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction." *See id.*, *quoted in Ahmed v. Dep't of Homeland Security*, 328 F.3d 383, 386 (7th Cir. 2003). Because Mr. Rios alleged that the INS failed to carry out a ministerial task, the court had jurisdiction over his mandamus petition.

Mr. Rios's petition was properly dismissed, however, because he cannot establish the prerequisites of mandamus relief. NACARA permitted Nicaraguan and Cuban nationals to apply for adjustment to lawful permanent resident status if they met certain eligibility criteria. 8 C.F.R. § 245.13(a). The regulations enacted

7

under NACARA required that all aliens "properly file an application for adjustment of status before April 1, 2000." 8 C.F.R. § 245.13(g). INS regulations provided that an application was properly filed when (1) the application was date-stamped by the INS, (2) the applicant signed and executed the application, and (3) the applicant attached the required filing fee or the INS granted a waiver of the fee. 8 C.F.R. § 103.2(a)(7)(i).

Mr. Rios concedes that his family's applications were not accompanied by a proper filing fee, but he maintains that their applications should have received a priority filing date, allowing the applications to be considered timely filed if the correct filing fee was submitted after the deadline. Mr. Rios did not request or receive a fee waiver. The regulations specifically provide that "[a]n application or petition which is not properly signed or is submitted with the wrong filing fee shall be rejected as improperly filed. *Rejected applications . . . will not retain a filing date*." 8 C.F.R. § 103.2(a)(7)(i) (emphasis added). Mr. Rios's application did not retain a filing date because it was not accompanied by a proper filing fee.

Mr. Rios argues that although his family's original submission did not include a sufficient filing fee for all of the applications, the check for $580.00 was sufficient to cover the filing fee for *his own* application. He also maintains that the original check was sufficient for his and his wife's applications. Reply Br. 3. Accordingly, he argues, the INS was required to do one of two things: (1) process

8

*his* application and refund the difference; or (2) give his application a priority filing date.

There are at least two problems with this argument. First, the steps urged by Mr. Rios are not consistent with standard INS procedure. The records custodian for the Mesquite, Texas Service Center stated in his affidavit that "[i]f multiple I-485 applications are submitted together with a single payment, the payment must be for the exact fee required for all applications or the applications will be rejected in total." Affidavit of Marvin Cervenka (June 26, 2003), Aplt. App. 63. Second, Mr. Rios does not indicate why or how the INS should have selected his application rather than one of his family members'. The check was written by his wife, Gloria Delgado Martinez. Before the district court, Mr. Rios stated that he and his son each paid $245.00, but his wife did not include a sufficient amount for herself—"She had submitted fees for the two other applicants." Brief in Response to Defendant's Motion to Dismiss 3–4, Aplt. App. 75–76. On appeal, he asserts that "[t]he amount for plaintiff and his wife was correct and sufficient." Reply Br. 3. He argues that since he was the "principal applicant and lead person in the matter," *Id.* at 2, his application should have been accepted as properly filed, but he does not provide any support for the theory that the INS must apportion a single check submitted with multiple applications in any particular way.

9

Finally, Mr. Rios claims that material issues of fact existed on the question whether the government considered his case closed. Aplt. Br. 7. He relies on the government's response to his motion to reopen, which stated that his application had not been denied. Mr. Rios reads this statement as an indication that a motion to reopen could still be filed. *See* Aplt. Br. 7. This argument mistakenly conflates denial of an application and rejection of an application. The INS does not deny an application until it has been processed. Because Mr. Rios's application was rejected, it was never processed, and there were no proceedings for the INS to reopen. *See* 8 C.F.R. § 103.2. His applications had not been denied because they had not been accepted. The government did not consider his case closed because it had never been opened. Mr. Rios did not raise a genuine issue of material fact regarding his motion to reopen.

To secure mandamus relief, the petitioner must show a "clear and indisputable" right to the writ. *Johnson*, 917 F.2d at 1285 (quoting *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 309 (1989)). Because he failed to submit a proper application by the deadline, Mr. Rios cannot show a clear right to relief under NACARA. Even Mr. Rios's best argument—that the initial filing included at least one adequate filing fee—leaves material questions unanswered, foremost among them why the INS was compelled to select Mr. Rios's application rather than his family members' applications. Since Mr. Rios failed to establish a clear

right to relief, he failed to state a claim upon which relief may be granted.

B.     *Equitable Estoppel*

To state a claim of estoppel against a private party, a litigant must establish

four elements:

> (1) the party to be estopped must know the facts; (2) the party to be
> estopped must intend that his conduct will be acted upon or must so
> act that the party asserting the estoppel has the right to believe that it
> was so intended; (3) the party asserting the estoppel must be ignorant
> of the true facts; and (4) the party asserting the estoppel must rely on
> the other party's conduct to his injury.

*Kowalczyk v. INS*, 245 F.3d 1143, 1149 (10th Cir. 2001).  A claim of estoppel

against the government requires an additional element: the party asserting estoppel

must show that the government has engaged in "affirmative misconduct."  *See id.*;

*see also Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 421–23 (1990);

*INS v. Hibi*, 414 U.S. 5, 8 (1973) (per curiam).  Equitable estoppel against the

government requires a particularly strong showing in the immigration context.

*Kowalczyk*, 245 F.3d at 1150.  The district court dismissed Mr. Rios's claim for

injunctive relief because Mr. Rios failed to establish any affirmative misconduct

by the government.  Op. 4.

Mr. Rios advances several factual theories of government malfeasance.

First, he argues that the INS engaged in affirmative misconduct by failing to

inform him of the defect in his application before the March 31, 2001 filing

deadline.  He does not produce any legal authority to support his claim that

11

responding to an application sixteen days after submission constitutes affirmative misconduct. More importantly, Mr. Rios raises this argument for the first time on appeal. Failure to raise an issue in the district court generally constitutes waiver. *See Tele-Communications, Inc. v. CIR*, 104 F.3d 1229, 1232–33 (10th Cir. 1997).

Even if he had preserved the issue for appeal, however, the timing of the INS's rejection of Mr. Rios's initial application is not an adequate ground for equitable estoppel. The INS's failure to notify Mr. Rios immediately that his filing fee was inadequate is evidence of negligence, at most. *See Lewis v. Washington*, 300 F.3d 829, 834 (10th Cir. 2002) ("[O]missions amount only to ordinary negligence."). Negligence does not constitute affirmative misconduct. *See Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (explaining that the government's failure to act is not an affirmative act and therefore cannot establish affirmative misconduct). In any case, a single processing center's inability to provide immediate notice of defects in every application does not fall below the reasonable standard of care owed by a government agency.

Mr. Rios claims that the government engaged in affirmative misconduct by suggesting that he resubmit his application when it knew that the deadline had passed. He argues that the original rejection letter of April 13, 2000 implied that if he resubmitted his application with the proper fee, he would retain the March 27, 2000 filing date. The very document that he cites for support defeats his

12

claim. The rejection notice specifically states, "The application or petition cannot be accepted because the proper fee of $245.00 U.S. is not attached. *Since the case is not properly filed, a priority or processing date cannot be assigned*." Supp. App. 59 (emphasis added). The plain language of the rejection notice made clear that Mr. Rios's application would not receive a priority filing date. This should have been sufficient to defeat any implication that subsequent applications would be deemed filed on March 27, 2000. Even if the slight implication that he could resubmit his application constituted affirmative misconduct, Mr. Rios cannot show that the INS intended that he rely on the suggestion or that he suffered injury because of his reliance. *See Kowalczyk*, 245 at 1149. Because the NACARA deadline had passed by the time he resubmitted his application, he had no right to relief.

Mr. Rios claims that the government engaged in affirmative misconduct by failing to keep him informed about the progress of his application. He complains that the INS did not send a final rejection of his claim until October, 2001, leading him to delay his application for asylum. In a letter dated October 26, 2001, the INS acknowledged that it held Mr. Rios's application because it believed that Congress would extend the filing deadline for NACARA applications. Mr. Rios does not explain how his pending NACARA application prejudiced his right to apply for asylum. In his Opening Brief, Mr. Rios indicates that his application for

political asylum is now pending. Br. 3.

Mr. Rios's final allegation of affirmative misconduct is that the INS improperly cashed the check submitted with his August 14, 2001 application. Mr. Rios did not raise this issue before the district court, and it therefore ordinarily would be waived. *See Tele-Communications, Inc.*, 104 F.3d at 1232–33. In this case, however, we exercise our discretion to consider a matter raised for the first time on appeal. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1222 (10th Cir. 1996) (exercising discretion to consider an issue on appeal where the factual basis was before the district court, the issue was briefed on appeal, and no factual findings were necessary to resolve it). On August 31, 2004, the Kansas Supreme Court accepted Mr. Rios's attorney's voluntary surrender of his law license. *See In re Phillips*, 97 P.3d 492 (Kan. 2004). At the time he surrendered his license, Mr. Rios's attorney was under review for failure to represent clients competently in immigration matters and failure to keep clients reasonably informed about their cases, among other charges. *Id.* The events that left Mr. Rios twisting in the wind suggest that his claims were not advanced in the most competent manner. These circumstances warrant an exercise of discretion to consider Mr. Rios's claim.

Even with the Court's solicitude, however, Mr. Rios cannot prevail on his estoppel claim. He may have suffered economic injury by the wrongful acceptance of his check, but this resulted from the fact that the check was cashed, not his

14

reliance on the government's conduct. The cashing of the check does not affect his claim for adjustment of status.[5] Therefore, even assuming (without deciding) that the INS engaged in affirmative misconduct by cashing his check, his estoppel claim fails.

## III.

The district court had jurisdiction over Mr. Rios's petition for writ of mandamus, but Mr. Rios failed to state a claim for relief. The district court properly dismissed his claim for injunctive relief because Mr. Rios's allegations did not support a claim of estoppel against the INS. The district court's judgment is AFFIRMED.

---

[5] In this action, Mr. Rios does not seek return of his payment, and this Court has no authority to order it. We hope and expect, however, that if Mr. Rios is correct that his check was wrongfully cashed, appropriate authorities within INS will correct this error and refund his money.