Damon SUTHERLAND, Plaintiff,

v.

**GOODYEAR TIRE & RUBBER CO., Defendant.**

**Civil Action No. 04–2391–CM.**

United States District Court,
D. Kansas.

Feb. 14, 2006.

Michael M. Shultz, Overland Park, KS, for Plaintiff.

David R. Cooper, J. Steven Pigg, Terelle A. Mock, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Damon Sutherland brings this action against his former employer, defendant Goodyear Tire & Rubber Co., claiming that defendant violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and fired him in retaliation for filing a workers' compensation claim. Specifically with respect to his FMLA claims, plaintiff alleges that defendant improperly failed to designate two periods of absences—in January/February 2002 and April/May 2002—as qualified FMLA leave, and then considered those absences in its decision to terminate plaintiff's employment. Because defendant initially notified plaintiff that the April/May absences were qualified FMLA leave, plaintiff argues that defendant is now estopped from asserting that plaintiff was not eligible for any FMLA leave. Plaintiff also claims that defendant violated the FMLA by proposing a settlement of claims that included a waiver of FMLA rights.

Pending before the court is Defendant's Motion for Summary Judgment (Doc. 28). For the following reasons, the court grants the motion in part and denies it in part.

## I. FACTS[1]

Defendant, who is subject to the FMLA, employed plaintiff from August 28, 2000 until August 23, 2002. During plaintiff's employment with defendant, plaintiff was represented by the local union.

Defendant's managers complete attendance cards day-to-day, as employees are absent. A rough review of the days plaintiff was absent from work reveals that he was absent approximately twenty-one days in 2000, ninety-nine days in 2001, and forty-three days in 2002. The exact number of days that plaintiff was absent and the dates on which those absences occurred are controverted.

Defendant uses a positive discipline procedure ("PDP"), and plaintiff was subject to that procedure. Steps I and II of the PDP do not require a letter to the employee, and are usually found only on the attendance cards maintained by the area managers. Steps III and higher require that the action be in the form of a letter. Step V of the PDP is discharge. The collective bargaining agreement between defendant and plaintiff's union also contains a provision about a "two-day cool," which provides that an employee will not be terminated until at least two full working days have elapsed from the infraction.

"Loss of Value" is a specific action taken to remove an individual from the PDP. Loss of Value differs from the PDP in that Loss of Value is not about punishment or reform. Rather, Loss of Value describes an employee who has a track record such that the employee is not present enough and is too unreliable to justify the basic expense of their employment. Loss of Value generally will apply when an employee has an absenteeism rate more than fifteen or twenty percent each year for at least two years, and the company concludes that the absenteeism rate is unlikely to change.

Defendant tried a new tactic in February 2002—using an "excessive absenteeism" concept. It was an attempt to address employees' abuse of doctor's slips for casual absences without invoking the more extreme concept of Loss of Value.

During his tenure with the company, plaintiff moved through the various stages of the PDP. Of relevance to the issues before the court is plaintiff's placement in Step III of the PDP in October 2001. From January 1, 2002 through February 18, 2002, plaintiff missed fourteen days of work. Beginning January 3, 2002, defendant placed him in Step IV of the PDP. On February 12, plaintiff submitted an accident and sickness benefit claim form for a back strain arising out of an off-the-job accident. Plaintiff also submitted an attending physician's statement, which indicated that a doctor had treated plaintiff on January 29 and February 10, and that plaintiff was experiencing a low back spasm or strain. Kevin Danko, Human Resources Specialist, would have considered the accident and sickness benefit claim form to determine whether plaintiff was eligible for FMLA leave, but Human Resources Manager Tony McCauley does not know if defendant made a determination as to whether plaintiff was eligible for FMLA leave. On February 18, defendant placed plaintiff in "excessive absenteeism."

On or about March 28, 2002, plaintiff sustained a knee injury at work. He completed a Report of Incident, but did not miss any work due to that injury until mid-April. Defendant sent an "Employers' Re-

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

port of Accident" to the Division of Workers Compensation, Kansas Department of Human Resources. From April 13 through May 7, plaintiff missed fifteen scheduled work days. On April 16, Dr. Joseph Huston, plaintiff's physician for his knee injury, sent a Work Status form to defendant, stating that plaintiff was unable to work from April 13 through April 16. On May 7, when plaintiff returned to work, he was placed on a two-day cool for his unexplained absence. Plaintiff then reported that he had been off due to a work-related injury and turned in an accident and sickness benefit form, which also served as an application for FMLA leave. The form was later stamped "Workers Compensation Goodyear Topeka" on May 28, 2002.

Defendant did not discharge plaintiff following the two-day cool. On May 11, 2002, defendant placed plaintiff on Loss of Value status. Defendant confirmed the Loss of Value status with a letter that informed plaintiff that "any future absences whether voluntary or involuntary, excused or unexcused, controllable or uncontrollable, avoidable or unavoidable, may be considered grounds for immediate discharge...." Plaintiff's placement on Loss of Value status was based upon the totality of his attendance record.

On May 16, 2002, defendant notified plaintiff that he was approved for FMLA leave from March 27 through May 7. Plaintiff assumed because of this notice that he was no longer on Loss of Value status, but no one specifically told him that. In preparing the eligibility notice, however, Mr. Danko did not calculate plaintiff's hours of work over the previous twelve months to determine whether plaintiff had worked at least 1250 hours, as required for FMLA eligibility. On June 25, Mr. Danko notified plaintiff that the FMLA approval was in error. He advised plaintiff that "[u]pon

review, you did not work sufficient hours to qualify for FMLA." Per Mr. Danko's calculations, plaintiff had only worked 1012 hours in the previous twelve months. Plaintiff was unaware of how many hours he needed to be eligible under the FMLA, or how eligibility was determined.

Beginning on June 24, 2002, plaintiff reported off work for complications with nosebleeds and never returned. Plaintiff did not tell anyone for the company the reasons for his absence, but he was talking to his union representatives, who were speaking to defendant on his behalf. Someone at the union hall informed plaintiff of the June 25 rescission of his FMLA leave, told him that defendant intended to terminate him after he missed work on June 25 and 26, and assured him that they were working with defendant over his return to work. Plaintiff testified by affidavit that he did not believe that his absences on June 25 and 26 could be used as the basis to terminate his employment, and that he relied on Mr. Danko's May 16 FMLA notice in making his decision to be absent on June 25 and 26.

Defendant sent plaintiff a certified letter dated July 12, 2002, requesting medical documentation to support his time off. The letter stated that failure to respond within seventy-two hours would be viewed as an act of resignation. Plaintiff did not contact defendant. Defendant then sent a second letter dated July 24, 2002, informing plaintiff that the company considered him to have voluntarily resigned. The letter was returned unopened.

Plaintiff arranged through the union to return to work on August 11, 2002. But plaintiff did not report to work at that time. Plaintiff's union representative told plaintiff that he would advise the company that plaintiff was not coming. When plaintiff did not report to work, defendant mailed him another letter, which stated

that plaintiff was being placed on a two-day cool. Effective August 23, 2002, defendant terminated plaintiff's employment for Loss of Value to the company.

On November 1, 2002, plaintiff's attorney wrote to defendant and advised that he had been retained to investigate potential claims against the company, including claims under the FMLA. Plaintiff's attorney wrote additional letters to defendant on March 19, 2003, demanding documents and resolution of plaintiff's situation.

Plaintiff grieved his discharge, and defendant and the union worked on reaching a compromise. Sometime around August 2004, defendant proposed, and plaintiff refused to accept, the following terms: (1) that plaintiff acknowledge that his absenteeism record justified his discharge; (2) that plaintiff "agree[ ] to release [defendant] from any legal claims known or unknown arising on or before the date of this agreement"; and (3) that plaintiff would receive no back pay or benefits for the period he was out of the plant.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. DISCUSSION

### A. FMLA Claims

Plaintiff brings two separate claims for violation of his FMLA rights: (1) that

defendant interfered with his FMLA rights by improperly denying plaintiff FMLA leave for absences in January/February 2002 and April/May 2002, and by considering those absences in its decision to terminate plaintiff's employment (Count One); and (2) that defendant interfered with his FMLA rights and retaliated against him by proposing a settlement of claims which included a waiver of his FMLA rights (Count Five). The court finds that there is a genuine issue of material fact with respect to Count One, but that there is no issue for the jury with respect to Count Five.

The FMLA provides eligible employees up to twelve weeks of leave during any twelve-month period "because of a serious health condition," in addition to other reasons. 29 U.S.C. § 2612(a)(1)(A)-(D). The FMLA also contains substantive protections for employees who request FMLA leave or otherwise assert a right under the FMLA. Specifically, § 2615(a)(1) prohibits employers from interfering with, restraining, or denying an employee's exercise or attempted exercise of his or her FMLA rights, and § 2615(a)(2) prohibits employers from discharging or discriminating against an employee who opposes any practice made unlawful by the FMLA. *Id.* § 2615(a)(1), (2). The Tenth Circuit recognizes both causes of action as the entitlement/interference theory and the retaliation/discrimination theory. *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir.2002).

In order to prove a claim of interference, an employee must demonstrate that the employer interfered with an FMLA-created right and that the employee was entitled to such a right. *Id.* (citations omitted). The employer's intent is immaterial. *Id.* (citations omitted). But an employee who requests leave has no greater rights than another employee who

does not, *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998) (citing 29 C.F.R. § 825.216(a)), so the employee must also demonstrate a causal connection between the two, *Dry v. Boeing Co.*, 92 Fed.Appx. 675, 678 (10th Cir.2004) (citing *Smith,* 298 F.3d at 961). The FMLA does not define "interference," but Department of Labor regulations provide that " '[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

■■■ To prove a prima facie case of FMLA retaliation, a plaintiff must show (1) that he engaged in activity protected under FMLA; (2) subsequent adverse action by the employer; and (3) a causal connection between such activity and the employer's action. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir.1997) (citation omitted). When analyzing FMLA retaliation claims, the court applies the traditional burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Richmond,* 120 F.3d at 208 (citation omitted).

Under this framework, defendant may rebut a prima facie case of retaliation by offering legitimate non-retaliatory reasons for the adverse action. *Id.* (citation omitted). Once defendant offers such reasons, plaintiff must present evidence that defendant's reasons are unworthy of belief. *See Gunnell,* 152 F.3d at 1263 (explaining that plaintiff asserting retaliation claim has the ultimate burden to demonstrate that the challenged employment decision was the result of intentional retaliation).

*1. Was plaintiff an eligible employee under the FMLA?*

■■■ Defendant claims that plaintiff cannot prevail on any FMLA claim because

plaintiff, who had a dismal attendance record, was ineligible for FMLA coverage based on his attendance. To be eligible for FMLA leave, an employee must have been employed "for at least 1,250 hours of service ... during the previous 12–month period." 29 C.F.R. § 825.110(a)(2); *see also Wells v. Wal–Mart Stores, Inc.,* 219 F.Supp.2d 1197, 1207 (D.Kan.2002). Defendant argues that it is plaintiff's burden to show that he qualified for the protections offered by the FMLA, and that plaintiff has failed to meet that burden. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 877 (10th Cir.2004) (noting that the burden of proof is on the plaintiff); *Smith,* 298 F.3d at 960 (same); *Wells,* 219 F.Supp.2d at 1207 (same). Defendant is correct, but at this stage of the proceedings, all plaintiff need show is that there is a genuine issue of material fact as to whether he can meet that burden at trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial").

To show that plaintiff did not work enough hours to qualify under the FMLA, defendant submitted an affidavit by Vicki Jacobsen, one of its law firm's paralegals. Ms. Jacobsen calculated the hours that plaintiff worked from September 3, 2000 through July 7, 2002, based on her review of a payroll register of hours and another document. According to Ms. Jacobsen, plaintiff worked 1148 hours in the twelve months preceding his January 2002 absences. He worked 1088 hours before March 27, 2002, and 1159 hours before April 14, 2002. In Ms. Jacobsen's deposition, plaintiff was able to demonstrate multiple mistakes and inconsistencies in Ms. Jacobsen's calculations, creating an issue of fact as to whether the totals are cor-

rect.[2] The court finds that an issue for the jury exists as to whether plaintiff worked enough hours to qualify as an eligible employee under the FMLA.[3]

### 2. Is defendant estopped from claiming that plaintiff was not an eligible employee under the FMLA?

■ Counts Two and Three of plaintiff's complaint allege that, even if plaintiff was not an eligible employee under the FMLA, defendant is estopped under federal and Kansas common law from claiming that he was ineligible because defendant initially granted plaintiff FMLA leave for the April/May absences. Arguably, the court need not rule on these claims now in light of its ruling that plaintiff may have been an eligible employee. But in the interest of giving the parties guidance on what theories plaintiff will be allowed to present at trial, the court will rule on the legal issue of whether estoppel can be applied to an FMLA action.

Under 29 C.F.R. § 825.110(d), if an employer tells an employee that his leave qualifies under the FMLA, the employer cannot later rescind that determination. The regulation states, "If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility." 29 C.F.R. § 825.110(d). Although several circuit court cases have struck down this regulation as an unlawful expansion of the definition of employees eligible to receive FMLA leave, see Woodford v. Cmty. Action of Greene County Inc., 268 F.3d 51, 55 (2nd Cir.2001) (hold-

ing regulation invalid and discussing cases in Seventh and Eleventh Circuits), the Tenth Circuit has not addressed this issue. Notably, the Woodford court stated that even in the absence of a formal regulation, the doctrine of equitable estoppel might apply to an employer who attempts to challenge its earlier decision that an employee was eligible for FMLA leave time. In Woodford, the plaintiff did not raise an equitable estoppel claim.

The Tenth Circuit has not addressed whether equitable estoppel applies in an FMLA action. Banks v. Armed Forces Bank, 126 Fed.Appx. 905, 906 (10th Cir. 2005). But the Second Circuit has specifically held that equitable estoppel could apply to claims of eligibility under the FMLA. See Kosakow v. New Rochelle Radiology Assocs., P. C., 274 F.3d 706, 727 (2nd Cir.2001); see also Duty v. Norton–Alcoa Proppants, 293 F.3d 481, 494 (8th Cir.2002); Dormeyer v. Comerica Bank–Ill., 223 F.3d 579, 582 (7th Cir.2000). The court finds the reasoning in these cases persuasive, and finds that equitable estoppel may apply to claims of eligibility under the FMLA. The court does not believe that this holding conflicts with the reasoning in Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 96, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), where the Supreme Court held that the Secretary of the Department of Labor could not expand the congressional definition of an eligible employee.

■ To state a claim of estoppel under federal law, a party must establish four elements:

---

**2.** Plaintiff asks the court to strike the affidavit because it is inherently inaccurate and incomplete. At this juncture, it is unnecessary for the court to strike the affidavit and its attachment. If defendant intends to offer the affidavit and its attachment at trial, defendant should be prepared to lay a proper foundation for the information and show how the affida-

vit is reliable evidence and otherwise admissible.

**3.** The parties quarrel over whether the period for determining eligibility begins with each absence, or whether it is calculated only once, with the first absence. For purposes of this motion, the court need not resolve the issue.

(1) the party to be estopped must know the facts;

(2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended;

(3) the party asserting the estoppel must be ignorant of the true facts; and

(4) the party asserting the estoppel must rely on the other party's conduct to his injury.

*Rios v. Ziglar,* 398 F.3d 1201, 1208 (10th Cir.2005) (citing *Kowalczyk v. INS,* 245 F.3d 1143, 1149 (10th Cir.2001)). The elements of equitable estoppel under Kansas law are similar. *See Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Group,* 343 F.Supp.2d 989, 1010 (D.Kan. 2004) (citing *Gillespie v. Seymour,* 250 Kan. 123, 823 P.2d 782 (Kan.1991)).

■ Defendant claims that plaintiff's estoppel claims fail because (1) he cannot show that defendant intended him to rely on the mistaken approval of FMLA leave; (2) he cannot demonstrate ignorance of the fact that he lacked sufficient hours to be an eligible employee; and (3) he cannot demonstrate justifiable reliance.

The court finds that plaintiff has presented genuine issues of material fact as to each of the elements of estoppel. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant intended that plaintiff rely upon the approval of FMLA leave. A reasonable jury could also find that plaintiff did not know how many hours he had worked or how many hours he was required to work before being FMLA-eligible. And finally, a reasonable jury could find that plaintiff was justified in relying on defendant's representation that his April/May absences were covered under the FMLA.

For these reasons, the court will allow plaintiff to present the theories in Counts Two and Three to the jury. Plaintiff may only present these theories with respect to his claim for April/May 2002, however, as defendant never approved plaintiff's January/February 2002 absences.

*3. Did defendant interfere with plaintiff's rights with respect to his January/February and April/May absences?*

■ In Count One, plaintiff claims that defendant placed him on Loss of Value status and terminated his employment based on protected absences. Although plaintiff initially indicated that he was seeking damages under both interference and retaliation theories, in his brief, he acknowledged that his "first claim is properly recognized as an interference claim since he does not claim under this count that he was discriminated or retaliated against for protesting any practice made unlawful by the FMLA." In light of this acknowledgment, the court will analyze Count One only under the entitlement/interference theory.

As noted above, " '[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). In both January/February and April/May 2002, defendant ultimately did not designate plaintiff's leave as FMLA leave. As noted above, there is a jury question as to whether plaintiff was eligible for FMLA leave. Plaintiff has also submitted evidence suggesting that on February 12, when he returned to work from a back injury, he submitted an accident and sickness benefit claim form, which should have also served as his FMLA leave request. This notice arguably was proper. *See* 29 C.F.R.

§ 825.208(e)(1) (providing that for unfore-seeable leave, the employee must notify the employer within two business days of returning to work of the need for leave); *id.* § 825.304(a) (providing that an employer may waive notice requirements); *id.* § 825.301(f) (providing that an employer who does not provide required notice of FMLA rights may not take action against an employee for failing to comply with any provision required to be set forth in the notice). And the attending physician's statement demonstrates that plaintiff was incapacitated for more than three days and saw a physician on two occasions, which meets the FMLA's standard for a "serious health condition involving continuing treatment," for which FMLA leave may be appropriate. *See* 29 C.F.R. § 825.114(a)(2).

Likewise, with respect to the April/May absences, plaintiff completed an accident and sickness benefit form when he returned from leave. He was incapacitated more than three days, and was seen by a physician on two occasions. The court concludes that genuine issues of material fact exist as to whether defendant improperly denied plaintiff FMLA leave in February and May 2002, thereby interfering with plaintiff's FMLA rights. Summary judgment is denied on Count One.

*4. Did defendant interfere with plaintiff's rights or retaliate against plaintiff during settlement negotiations?*

■ Count Five, as stated in the Pre-trial Order, describes plaintiff's claim as follows: "Goodyear interfered with and retaliated against Sutherland's exercise of his rights under the FMLA by refusing to reinstate[ ] him unless he gave up his FMLA rights." Specifically, plaintiff alleges the following facts in support of this claim:

In August 2004, Goodyear and the Union were negotiating the terms of a return-to-work agreement for Sutherland. However, the agreement did not provide for back pay and Sutherland did not want to accept the agreement. About this time, Sutherland's legal counsel sent a draft federal complaint to Goodyear, demanding that Sutherland's rights be respected. Goodyear sent a revised draft of a return-to-work agreement to the Union, but it required that Sutherland waive all legal claims against Goodyear. At the time, Sutherland was pursuing a possible claim under the FMLA and a workers' compensation claim. Goodyear and the Union could not agree on a return-to-work agreement and Sutherland filed this lawsuit on or about August 20, 2004.

Defendant claims that Count Five fails to state a claim because plaintiff was not deprived of any substantive right and because the offers and demands are inadmissible under F.R.E. 408 as offers of compromise. The court finds that plaintiff was not deprived of any substantive right, and need not address defendant's Rule 408 argument.

Count Five has no basis in the law, either as an interference claim or as a retaliation claim, because defendant's offer of settlement was merely that: an *offer.* Plaintiff did not even accept the offer. Moreover, several courts have found or assumed that FMLA waivers in separation agreements are permissible. *See, e.g., Faris v. Williams WPC–I, Inc.,* 332 F.3d 316, 322 (5th Cir.2003); *Halvorson v. Boy Scouts of Am.,* 2000 WL 571933, at *2–3 (6th Cir. May 3, 2000); *Schoenwald v. Arco Alaska, Inc.,* 1999 WL 685954, at *2 (9th Cir. Aug.30, 1999); *Riddell v. Med. Inter–Ins. Exch.,* 18 F.Supp.2d 468, 471 (D.N.J.1998). *But see Taylor v. Progress Energy, Inc.,* 415 F.3d 364, 371 (4th Cir.

2005) (holding that 29 C.F.R. § 852.220(d) prohibits any waiver of FMLA rights without prior approval of the DOL or a court). The court concludes that, as a matter of law, defendant did not deny plaintiff of a substantive right or take any adverse action against plaintiff by making this settlement offer. The court grants summary judgment with respect to Count Five.

## B. Retaliatory Discharge Claim

In Count Four, plaintiff claims that defendant wrongfully terminated his employment for absences that were the result of workplace injury.

 Kansas courts have adopted the *McDonnell Douglas* burden-shifting framework for analyzing retaliation cases. *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1294 (10th Cir.2002). Plaintiff, therefore, must establish a prima facie case that raises a rebuttable presumption of retaliatory intent by showing that:

(1) he or she filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of plaintiff's compensation claim, or the fact that he had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination.

*Id.* at 1298. Once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a 252 F.3d 1111, 1116 (10th Cir.2001). The burden then shifts back to plaintiff to establish pretext. To establish pretext in a retaliation claim, the plaintiff must show " 'that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham rea-

son.' " *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (quoting *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1535 (10th Cir. 1995)). The plaintiff's burden, as noted above, "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir.1997) (citation omitted).

 Even if plaintiff could establish a prima facie case, which is questionable, defendant has offered a legitimate non-discriminatory justification for plaintiff's placement on Loss of Value and ultimate termination; the "totality of [plaintiff's absenteeism] record warranted the action" and plaintiff failed to ever report back to work. It is plaintiff's burden to show a triable issue of fact as to whether defendant's actions were pretextual, and plaintiff has not met that burden. There is not a shred of evidence before the court suggesting that defendant placed plaintiff on Loss of Value status or terminated plaintiff because he filed a workers' compensation claim. Although plaintiff was placed on Loss of Value status immediately after his April/May work-related injury absences, defendant did not discharge plaintiff until August 23, 2002—over three months after plaintiff returned from his last work-related injury absences. It is undisputed that the six-week absence from June to August 2002 was unrelated to his workplace injury. It is also undisputed that plaintiff did not report to work as scheduled on August 11.

Plaintiff seems to suggest that if defendant knew or should have known of his work-related injury, and if defendant considered any of his work-related injury absences in the termination decision, he has a claim for retaliation under Kansas law. The court disagrees. The only evidence

plaintiff has in support of this claim is the temporal proximity between his workers' compensation claim and his placement on Loss of Value (four days after plaintiff returned from leave) and between the claim and his termination (over three months). Plaintiff cannot even establish the prima facie case requirement of causation with respect to the termination decision—let alone pretext. *See Richmond*, 120 F.3d at 209 (holding that a three-month period between protected activity and termination, standing alone, does not establish a causal connection). Although causation may be inferred from the close temporal proximity of plaintiff's absences to his placement on Loss of Value, temporal proximity alone is insufficient to defeat summary judgment. *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137–38 (10th Cir.2005) (citations omitted); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir.2004); *Pastran v. K–Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir.2000). Summary judgment is proper with respect to this claim.

For the above-stated reasons, plaintiff may present his claims under Counts One, Two, and Three at trial. The court grants summary judgment with respect to Counts Four and Five.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is granted in part and denied in part.